UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

AVNI ARIFI,

                Plaintiff,

Case No. 3:13-cv-01870-HA

OPINION AND ORDER

      v.

FEDEX GROUND PACKAGE SYSTEM,
INC., DBA FEDEX PACKAGE
DISTRIBUTION CENTER,

                Defendant.

HAGGERTY, District Judge:

        Plaintiff Avni Arifi brought this lawsuit against defendant FedEx Ground Package

System, Inc. (FedEx), alleging employment discrimination in violation of both state and federal

law: Oregon Revised Statute (ORS) 659A.030; Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e (Title VII); and 42 U.S.C. § 1981. Plaintiff seeks compensatory and punitive

damages. On June 18, 2014, defendant filed a Motion for Summary Judgment [18]. The court

heard oral argument from the parties on September 18, 2014. For the following reasons,

defendant's Motion for Summary Judgment [18] is granted.

1 - OPINION AND ORDER

## FACTUAL BACKGROUND

### 1.    Defendant's Business

Defendant is a federally-registered motor carrier that utilizes independent contractors to provide transportation, package pick-up and package delivery services throughout the United States. Dickson Decl. ¶ 3. The relationship between defendant and each independent contractor is governed by an Operating Agreement, which confirms that the independent contractors are engaged as independent businesses. Dickson Decl. ¶ 3.

Linehaul contractors provide transportation services with 18-wheel tractor-trailers, using their own tractors to transport loaded trailers, which are owned by defendant, between two FedEx stations. Dickson Decl. ¶ 4. The linehaul contractors are responsible for all operating and maintenance expenses associated with their tractors, and they are responsible for managing their own businesses. Accordingly, they determine how best to perform and earn a profit under their contract. Dickson Decl. ¶ 4.

According to Sean Dickson, Senior Linehaul Manager at defendant's Portland, Oregon hub, the independent contractors agree to treat all personnel providing services under the Operating Agreement as their own employees. Dickson Decl. ¶ 5. He explains that the independent contractors exercise sole and exclusive control over their employees, including hiring, firing, and disciplinary decisions. He states that contractors establish the drivers' routes and determine the drivers' wages and hours. Dickson Decl. ¶ 5. However, FedEx maintains minimum qualifications for all drivers within its system, and each driver must be initially approved by FedEx before he can be hired by an independent contractor. Dickson Decl. ¶ 5.

/ / /

2 - OPINION AND ORDER

### 2.      Plaintiff's Employment History

Plaintiff has been employed by several independent contractors that provide

transportation services to defendant.  Initially, plaintiff began working as a driver for Kamenko

Express, Inc. in 2006.  Pl.'s Dep. 13:19-21.  Before obtaining that position, he filled out an

application in a FedEx facility to determine whether he met defendant's minimum qualifications

for drivers.  Pl.'s Dep. 14:5-12.

At some point, plaintiff was offered a local route through another independent contractor,

Throttleman 2, and plaintiff accepted the new job offer.  Plaintiff admits that FedEx had no

involvement in this transfer, including no involvement in setting plaintiff's new route and new

wage.  Pl.'s Dep. 19: 12-25; 20:1-24.  Plaintiff worked for Throttleman 2 for approximately two

and a half years.  When Throttleman 2 changed plaintiff's schedule from a dedicated route to

rotating routes, plaintiff set out once again to find a new job.  Pl.'s Dep. 22:24-25; 23:1-18.

Plaintiff obtained employment driving a dedicated route with Wade Transport Co., (Wade

Transport) another independent contractor for defendant.  Plaintiff admits that he did not seek

any permission from defendant before accepting this new position and driving this new route.

Pl.'s Dep. 24:25; 25:1-4.  During this employment, Wade Transport routinely required plaintiff to

report to the FedEx hub in Portland, Oregon.  Pl.'s Decl. ¶ 5.  There, FedEx gave plaintiff

paperwork that assigned him to a specific trailer each day and identified the location to which the

trailer was to be delivered.  Pl.'s Decl. ¶¶ 5, 6.  With his assignment for the day, plaintiff would

proceed to the trailer parking area to locate his assigned trailer and hook it to his tractor.  This

process generally took ten to fifteen minutes, unless plaintiff's assigned trailer was blocked by

other trailers, in which case a FedEx employee was needed to move them.  Pl.'s Decl. ¶¶ 8-12.  If

3 - OPINION AND ORDER

a FedEx employee was not available, plaintiff would move the trailers as directed by FedEx

dispatch.  Pl.'s Decl. ¶ 12.  Once the trailer was attached to his tractor, plaintiff transported it to

Seattle, Washington, and then returned to Portland to pick up another trailer, which he

transported to Salem, Oregon.  Pl.'s Dep. 26:7-13.  In the three years that plaintiff worked for

Wade Transport, there were approximately ten to fifteen instances in which FedEx contacted him

directly to temporarily alter his regular route.  Pl.'s Dep. 129:13-25.

    While he worked for Wade Transport, plaintiff drove three different tractors, which were

all owned by Wade Transport.  Pl.'s Dep. 30:1-18.  If plaintiff had a problem on the road, he was

directed to call FedEx dispatch directly, and FedEx dispatch would direct him in addressing the

problem.  Pl.'s Decl. ¶ 13.  If plaintiff experienced a mechanical problem with the tractor or

trailer while on a route, FedEx would arrange for a mechanic and direct plaintiff to wait near the

tractor.  Pl.'s Decl. ¶¶ 14-15.  If plaintiff received a traffic citation, he was required to report it to

FedEx, which had the ability to suspend plaintiff from driving.  Pl.'s Decl. ¶¶ 17-18.  Through the

Operating Agreement, both FedEx and Wade Transport had the ability to issue suspensions,

including lifetime suspensions, to drivers for failing to meet certain minimum criteria.  Pl.'s

Response Ex. 2.  FedEx never paid plaintiff any compensation and it was Wade Transport that

offered plaintiff employment benefits, such as health and disability insurance.  Pl.'s Dep. 30:19-

25; 31:1-14.

### 3.    Alleged Harassment

    Plaintiff claims that beginning in 2009, while he was employed with Throttleman 2, and

throughout his employment with Wade Transport, employees of FedEx and employees of other

independent contractors harassed him based on his race, national origin, and religion.  Plaintiff

was born in Kosovo. Pl.'s Dep. 9:12-13. He identifies his race as white and his national origin as Albanian. Pl.'s Dep. 51:15-20. Plaintiff is a practicing Muslim. Pl.'s Dep. 51:24-25.

Plaintiff alleges the following instances of harassment:

- In 2009, plaintiff was leaving the FedEx hub with his shirt off because the air conditioning in his truck was broken. Safety Manager Ryan Fleck said to plaintiff, "Put the uniform on because you're looking like a terrorist not having the uniform on." Pl.'s Dep. 64:1-11.

- In January 2012, a dispatcher said, "If FedEx will stop hiring these low life brats who speak three words in English, my job and my life will be much easier." Jordan Decl., Ex. 2 at 3.

- On June 13, 2012, a driver said to plaintiff, "Hi, terrorist." Jordan Decl., Ex. 2 at 4.

- On June 14, 2012, another driver said, "Hey, here comes [sic] terrorist." Jordan Decl., Ex. 2 at 4.

- On June 15, 2012, another driver said to plaintiff as he arrived to work, "Here comes the terrorist telling [sic] how much explosive you have on the trailer." Jordan Decl., Ex. 2 at 5.

- On June 16, 2012, plaintiff asked another driver for a ride. That driver responded, "I don't put terrorists in my truck." Jordan Decl., Ex. 2 at 5.

- On July 9, 2012, an employee named Dave was training a new employee on how to hook trailers to tractors. Dave said to plaintiff, "Don't hate her its her first time hooking up doubles." Plaintiff responded, "I don't hate." Dave replied, "You don't hate but you still can be a terrorist." Jordan Decl., Ex. 2 at 6.

- On September 14, 2012, a dispatcher asked plaintiff when he will be going on vacation. In response to plaintiff's answer, the dispatcher said, "Do you think you can get back in the USA?" When plaintiff asked why, the dispatcher responded because "of home land security [sic]." Jordan Decl., Ex. 2 at 7.

- On October 8, 2012, plaintiff visited a mechanic to fix his trailer. The mechanic said, "you fucking Russian." Plaintiff stated that he is not Russian and the mechanic responded, "But you still are terrorist [sic]." Jordan Decl., Ex. 2 at 8.

- On April 4, 2013, a mechanic said to plaintiff, "Fucking terrorist, this is not

immigrant parking." Jordan Decl., Ex. 2 at 8.

In January or February of 2013, plaintiff attended a meeting with Sean Dickson; Ron and Tina Wade, representatives of Wade Transport; Aaron Scott, Senior Security Specialist with FedEx Express; and Remzi Arifi, plaintiff's brother. Dickson Decl. ¶ 9. The purpose of the meeting was to discuss the offensive comments that were made toward plaintiff and his brother, who also worked for Wade Transport. Plaintiff and his brother were told to inform Dickson if any similar comments were made in the future. Dickson Decl. ¶ 9. After the meeting, Dickson informed staff that FedEx would not tolerate such behavior. Dickson Decl. ¶ 9. Plaintiff did not report any concerns to Dickson after that meeting. Dickson Decl. ¶ 9.

On June 26, 2013, plaintiff quit his job at Wade Transport in fear that he was going to be fired. Pl.'s Dep. 43:25; 44:1-19. On the same day, plaintiff was offered and accepted a job at GNW Express, another independent contractor that provides transport services to FedEx. Pl.'s Dep. at 87:17-25.

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## ANALYSIS

In his First Amended Complaint, plaintiff alleges racial, national origin, and religious discrimination under three theories: disparate treatment, pursuant to ORS 659A.030 and 42 U.S.C. § 2000e, hostile work environment, pursuant to ORS 659A.030 and 42 U.S.C. § 2000e, and employment discrimination pursuant to 42 U.S.C. § 1981. First Am. Compl. [7] ¶ 3. Defendant argues that summary judgment is appropriate for two reasons: (1) plaintiff's claims are premised on the existence of an employment relationship that did not exist and (2) plaintiff has not established a prima facie case for discrimination. The court will address each of defendant's

arguments in turn.

    1.    **Plaintiff's Relationship with FedEx**

    Defendant argues that FedEx was not plaintiff's employer; therefore, FedEx is not liable for employment discrimination under Title VII and ORS § 659A.030. Title VII prohibits employers from discriminating against an employee on the basis of race, color, religion, sex, or national origin. In order for Title VII protections to apply, the statute does not require a direct employer-employee relationship; however, "there must be some connection with an employment relationship." *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 930 (9th Cir. 2003) (citation omitted). Similarly, ORS § 659A.030 requires that a plaintiff have an employment relationship with a defendant in order to establish liability. *Foster v. Flaherty*, No. 11-6115-HO, 2011 WL 5057072, *7 (D. Or. Oct. 24, 2011). Therefore, unless plaintiff can demonstrate some employer-employee relationship between himself and defendant, FedEx cannot be held liable for plaintiff's Title VII and ORS 659A.030 claims.

    The parties have argued at length about whether plaintiff was an employee of FedEx. The court notes that the Ninth Circuit recently addressed a similar issue in *Slayman v. FedEx Ground Package System, Inc.*, Nos. 12-35525, 12-35559, 2014 WL 4211422 (9th Cir. Aug. 27, 2014). In *Slayman*, the Ninth Circuit answered the question of whether drivers that deliver packages to homes and businesses are FedEx employees or independent contractors. *Id.* Relying heavily on the Operating Agreement that governs the relationship between FedEx and those drivers, the Ninth Circuit held that the drivers were FedEx employees under Oregon's right-to-control test. *Id.* at *13.

    The facts in this case differ in that plaintiff was a linehaul driver, driving FedEx trailers

from one FedEx hub to another.  A different Operating Agreement governed plaintiff's

relationship with FedEx, and neither party has submitted a copy of that Operating Agreement to

the court in this case.  Therefore, the court is not sufficiently informed to apply the analysis in

*Slayman* to the facts of this case and make a ruling as to plaintiff's employment status.  The court

will therefore forgo opining on plaintiff's employment status.  Nevertheless, plaintiff's claims fail

as a matter of law, because, even if plaintiff was an employee of FedEx, his allegations fall short

of discriminatory conduct under Title VII, ORS 659A.030 and 42 U.S.C. §1981.

### 2.    Discrimination

Plaintiff has alleged three types of discrimination in his Amended Complaint: (a) hostile

work environment, pursuant to ORS 659A.030 and 42 U.S.C. § 2000e, (b) disparate treatment

pursuant to ORS 659A.030 and 42 U.S.C. § 2000e, and (c) discrimination pursuant to 42 U.S.C.

§ 1981.  At oral argument, plaintiff withdrew his disparate treatment claim; therefore, summary

judgment should be granted in defendant's favor on that claim.  As for plaintiff's remaining

claims for discrimination, plaintiff has failed to establish a prima facie case for the following

reasons.

### a.    Hostile Work Environment

Defendant argues that plaintiff has failed to establish a prima facie case for his hostile

work environment claim under Title VII and ORS 659A.030.  Because ORS 659A.030 is

modeled after Title VII, plaintiff's state law discrimination claims can be analyzed together with

his federal discrimination claims.  *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or.

2007).  "Under Title VII, an employee has a right to work in an environment free from

discriminatory intimidation, ridicule, and insult." *Woods v. Graphic Comms.*, 925 F.2d 1195,

1202 (9th Cir. 1991) (internal quotations omitted). In order to establish a prima facie case for his hostile work environment claim, plaintiff must raise a genuine issue of material fact as to whether (1) he was subjected to verbal or physical conduct of a religious or racial nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Westendorf v. West Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (citing *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 997 (9th Cir. 2010)). Plaintiff must also present evidence to support a finding that his work environment was both objectively and subjectively offensive, meaning that a reasonable person would find the work environment hostile or abusive, and that plaintiff in fact did perceive it as such. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

However, Title VII is not a "general civility code" and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (quotations and internal citations omitted). "The mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee is not, by itself, actionable under Title VII." *Ellison v. Brady*, 924 F.2d 872, 876 (9th Cir. 1991) (internal quotations omitted). On the other hand, "the harassment need not cause diagnosed psychological injury." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (citation omitted). Rather, "[i]t is enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position.'" *Id.* (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). In evaluating the objective hostility of a

work environment, the Ninth Circuit considers the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted). "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* (citation omitted).

In this case, plaintiff argues that he was subjected to a hostile work environment when FedEx allegedly allowed its employees and other independent contractors to repeatedly and regularly refer to plaintiff as a terrorist. Plaintiff has identified approximately ten instances in which he was called a terrorist over the course of four years. Plaintiff argues that, due to the September 11, 2001 attacks on the World Trade Center in New York, the word "terrorist" carries with it powerful negative connotations and cannot be likened to simple teasing. In effect, plaintiff argues, without any legal citation, that the use of the word terrorist is sufficiently severe to create a hostile work environment regardless of how infrequently it was uttered.

More persuasive is defendant's comparison of the facts at issue with analogous Ninth Circuit precedent. In *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003), the plaintiff's hostile work environment claim was based on his supervisor's comments that the plaintiff had a "typical Hispanic macho attitude" and that he should consider transferring to the field because "Hispanics are good in the field." The plaintiff also alleged that his supervisor unjustifiably yelled at him on two occasions and drafted two memos that included false complaints about the plaintiff's performance. *Id.* at 643. All of these incidents occurred over the course of more than one year. *Id.* The Ninth Circuit held that the allegations did not support a claim for hostile work environment. *Id.* at 644.

The court in *Vasquez* was persuaded by the dismissal of a hostile work environment claim in *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990). In *Sanchez*, Latino police officers alleged that the city police officials and the city created a racially hostile work environment. The Ninth Circuit found that no hostile work environment existed despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on the plaintiffs because they were Latino. *Id.*

Similarly, in *Westendorf*, the plaintiff alleged a hostile work environment based on incidents that occurred over the course of six months. 712 F.3d at 419-20. During the first month of her employment as a project manager assistant, her supervisor referred to her duties as "girly work." *Id.* at 419. She alleged that she was subjected to consistent offensive comments regarding, *inter alia*, the appearance of women's breasts, the use of feminine hygiene products, and sex. *Id.* at 419-20. She also alleged that on four different occasions, another employee instructed her to clean their workspace in a French maid's costume. *Id.* at 420. The Ninth Circuit concluded that the evidence did not show sexual harassment that was sufficiently severe or pervasive to alter the terms of the plaintiff's employment and subject her to an abusive environment. *Id.* at 422.

It is also informative to consider cases that demonstrate the type of conduct necessary to survive summary judgment on a hostile work environment claim. In *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001), the court found that a hostile work environment existed when a male employee was subjected to relentless insults, name-calling,

12 - OPINION AND ORDER

vulgarities, and taunts of "faggot" and "fucking female whore" by male co-workers and supervisors at least once a week and often several times per day. *Id.* at 870. Similarly, in *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047 (9th Cir. 2007), the Ninth Circuit found that a hostile work environment existed when a direct supervisor made repeated sexual advances on the plaintiff. Specifically, the plaintiff alleged that, over the course of several months, her supervisor repeatedly made inappropriate comments regarding plaintiff's body; repeatedly requested that she "make love to him" despite her emphatic negative responses; told her that "he wanted her;" and entered a women's restroom where he grabbed her arms and gave her an "open-mouthed kiss." *Id.* at 1051-52.

When considered within the scope of these previous cases, the conduct alleged by plaintiff in this case did not rise to the level of an abusive work environment. The allegedly harassing incidents occurred over the course of four years. The conduct was certainly less frequent, less severe, and less humiliating than the conduct at issue in *Nichols* and *Craig,* and was more in line with that in *Vasquez.* The court finds the severity and pervasiveness of the alleged conduct in this case particularly similar to the alleged conduct in *Westendorf.* Like Arifi, the plaintiff in *Westendorf,* was not subjected to any physical abuse, but was subjected to at least ten offensive comments. The court does not find the comments at issue any more severe than those in *Westendorf;* therefore, this court's conclusion should not differ from that of the Ninth Circuit. While the conduct in this case is offensive, it is not severe or pervasive enough to unreasonably interfere with plaintiff's employment. Therefore, summary judgment is granted in defendant's favor on plaintiff's hostile work environment claim.

/ / /

13 - OPINION AND ORDER

    b.  Employment Discrimination Pursuant to 42 U.S.C. § 1981.

  Finally, defendant argues that plaintiff has failed to establish a prima facie case for employment discrimination under 42 U.S.C. § 1981. "Those principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." *Manatt v. Bank of America*, 339 F.3d 792, 797 (9th Cir. 2003) (citing *EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1233 n. 7 (9th Cir.1984)). As discussed above, plaintiff's claims under Title VII fail as a matter of law; therefore, his claim under § 1981 must also fail.

## CONCLUSION

  For the foregoing reasons, defendants' Motion for Summary Judgment [18] is GRANTED and this case is dismissed with prejudice.

  IT IS SO ORDERED.

  DATED this 30 day of September, 2014.

              Ancer L. Haggerty
            United States District Judge

14 - OPINION AND ORDER